1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

9

INSTANTCERT.COM, LLC and STEVEN
GLOER,

10

Plaintiffs,

11

v.

12

ADVANCED ONLINE LEARNING, LLC
and BRANDON PERRY,

13

14

Defendants.

15

Case No. 2:11-cv-1833-MMD-GWF

ORDER

(Plfs.' Motion for Preliminary Injunction –
dtk. no. 31)

16

17        Before the Court is Plaintiffs Steven Gloer and InstantCert.com, LLC's Motion for

18   Preliminary Injunction.  (Dkt. no. 31.)  For the reasons discussed below, Plaintiffs' Motion

19   is DENIED.

20   **I.        BACKGROUND**

21        InstantCert.com, LLC ("InstantCert") provides online study materials for the

22   College-Level Examination Program ("CLEP"), Dantes, and Excelsior examinations used

23   to earn college credit at participating universities.   These materials include examination

24   questions and answers organized by a number of different subject areas.   With the

25   assistance of its officer Steven Gloer, InstantCert created study materials for the CLEP

26   in 2004.  Gloer registered the materials with the United States Copyright Office.  (Dkt.

27   no. 31-A.)   In 2005, InstantCert created study preparation materials for the Dantes

28   examinations, and Gloer had those materials registered as well.  (*Id.*)

1    InstantCert and Gloer allege that Defendants Advanced Online Learning, LLC
2 ("AOL") and their employee/owner, Defendant Brandon Perry, created a website in 2008
3 at www.paceprep.com that copied all of Plaintiffs Dantes and CLEP's materials.
4 Plaintiffs allege that, upon learning of the infringement, they sent a cease-and-desist
5 letter to the Defendants.  The website subsequently shut down.  Plaintiffs further allege
6 that on or about February 16, 2010, Defendants created another infringing website,
7 www.misterprep.com, where Defendants sell exact duplicates and substantially similar
8 copies of thirty one (31) of the copyrighted materials that Plaintiffs own and sell,
9 including the Dantes and CLEP exam preparation materials.

10    Plaintiffs filed this suit on November 16, 2011, alleging copyright infringement,
11 unfair competition, and trade dress infringement.  (Dkt. no. 1.)  Plaintiffs waited until May
12 21, 2012, to seek preliminary injunction.

13 **II.    LEGAL STANDARD**

14    To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood
15 of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of
16 hardships favors the plaintiff; and (4) that the injunction is in the public interest.  *Winter v.*
17 *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Plaintiffs have not demonstrated the
18 second and third requirements.

19 **III.   DISCUSSION**

20    Plaintiffs seek a preliminary injunction on the basis of their copyright infringement
21 claims.  The Court will therefore only examine these claims.

22    **A.    Likelihood of Success on the Merits**

23    To succeed on a copyright infringement claim, Plaintiffs must establish that (1)
24 they are the owners of the copyright; and (2) their works have been copied by
25 Defendants.  *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004); *Sid & Marty Krofft*
26 *Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977); *see* 17
27 ///
28 ///

U.S.C. § 106.[1]   Defendants argue that Plaintiffs cannot demonstrate a likelihood of success because Plaintiffs are not the owners of a valid copyright.  Defendants do not challenge the second element of the copyright infringement claim, and thus concede for the purposes of this Motion that Plaintiffs' works have been copied.

A copyright certificate establishes prima facie evidence of the validity of a copyright and of the facts in the certificate.  17 U.S.C. § 410(c).  The presumption of validity is rebuttable.  *See Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085-86 (9th Cir. 1989); *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1321 (9th Cir. 1986); *see, e.g.*, *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980).  To rebut the presumption, the defendant must offer some evidence to dispute or deny the plaintiff's prima facie case of infringement.  *See, e.g.*, *North Coast*, 972 F.2d at 1033; *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763 (2d Cir. 1991).

Here, Plaintiffs provide copyright certificates as prima facie proof of the validity of their copyrights in the materials copied by Defendants.  (*See* Dkt. no. 31-A.)  Defendants attempt to rebut that presumption by advancing three arguments: (1) Plaintiffs' materials are unoriginal and belong to other third parties; (2) Plaintiffs failed to demarcate their copyright registrations as compilations and/or derivative works; and (3) the deposit copy of one of the copyrights has been destroyed, rendering that copyright invalid.  All three arguments fail.

---

[1]17 U.S.C. § 106 provides: "the owner of copyright under this title has exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, or dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, or dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission."

### 1.   Copyright status of Plaintiffs' materials

The only disagreement between the parties here concerns the quantity of infringement that has occurred.   Accordingly, Defendants are likely either liable for infringing directly on various questions and answers copied from Plaintiffs' product, or, if those materials are unoriginal and/or copyrighted elsewhere, Defendants are at least liable for copying Plaintiffs' original composition of unoriginal or copyrighted works.

Defendants challenge the originality of Plaintiffs' materials, and argue that much, if not all, of the materials were lifted from other sources.   Defendants point to questions and answers that exist in Plaintiffs' CLEP materials that are substantially similar or otherwise copied verbatim from sources whose copyrights predated Plaintiffs' date of registration.   According to Defendants, a short analysis of Plaintiffs' CLEP materials using online plagiarism tracking tools revealed that answers from at least 18 of the 29 chapters are unoriginal, and that 479 test questions or answers from 18 of those chapters are lifted from other sources.[2]   They point to several chapters consisting almost exclusively of lifted materials, including Chapters 2, 3, 27, and 28.

To the extent that Plaintiffs' materials are original, Defendants have infringed on valid copyrights.  If, however, some of those materials are unoriginal to Plaintiffs, or are copyrighted elsewhere, Plaintiffs' purported copyright over those materials is invalid.  *See* 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in *original* works of authorship fixed in any tangible medium of expression . . . .") (emphasis added in parenthetical); *Feist Pub'lns. Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 347 (1991) ("The originality requirement . . . remains the touchstone of copyright protection today.").  Plaintiffs do not concede that any of their materials are unoriginal, and it is not clear from the briefing what percentage of materials is contested.  However, assuming at least some of the materials were composed by either Gloer or the independent

---

[2]According to Defendant Perry's declaration, most of the copyrighted materials at issue have not been reviewed for originality.  The CLEP materials contain at least 10,491 exam questions.  Plaintiffs do not concede that the 479 are unoriginal to Plaintiffs' writers.

4

contracting firm hired to create the questions for Plaintiffs, Defendants have likely infringed on Plaintiffs' valid copyrights.

In addition, Plaintiffs are also likely to succeed on copyright infringement claims relating to the original compilations of their materials.  Defendants do not challenge Plaintiffs' copyright status as original compilations. The Copyright Act protects "collective" works, *i.e.* those works "formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C § 101.  So long as Plaintiffs selected, coordinated, or arranged their various materials in unique and creative ways, Plaintiffs are entitled to protection over their compilations.[3] Defendants claim that the titles and subheadings that Defendants copied from Plaintiffs are the intellectual property of College Broad and Prometric, the entities that own the CLEP and Dantes tests, respectively.   But Plaintiffs do not challenge Defendants' copying of the titles or subheadings — rather, Plaintiffs seek the Court's protection from the infringement of Plaintiffs' original compilations of various questions into groups.  The creative act of assembling materials is copyrightable.  *See Feist Pub'lns., Inc.*, 499 U.S. at 347-49.  For this reason, Defendants are either liable only for infringing on Plaintiffs' thin copyright on their original composition of questions and answers, or Defendants are also liable for directly infringing on Plaintiffs' copyrights in the underlying materials.

### a.    Failure to Demarcate as Compilation or Derivative

Defendants' second argument revolves around Plaintiffs' failure to claim compilation or derivative work status on their copyright applications.  Gloer left lines 6(a)

---

[3]Of course, Plaintiffs would not receive protection over the underlying copyrighted material solely because they arranged that material in a creative way. Their copyright would exist only in the *form* of the compilation, not in that which is compiled.  *See* 17 U.S.C. § 103(b) ("The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."); *Feist Pub'lns., Inc.*, 499 U.S. at 348 ("Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author.").

1   and 6(b) on the Certificates of Registration blank.  (Dkt. no. 31-A.)  These lines ask a

2   registrant to identify any preexisting work or works that the copyrighted material is based

3   on, and to identify the material added to the original work.   Defendants argue that

4   Gloer's failure to identify these materials in the registration, coupled with the fact that the

5   material was prepared through the assistance of an attorney, "strongly indicates" that the

6   omission was intentional and thus renders the copyrights invalid.

7          Plaintiffs counter that Gloer was not aware that his independently contracted

8   writers hired to compose the questions and answers used existing sources.  Plaintiffs

9   draw the Court's attention to the "Services Agreement" that operated between the

10  Plaintiffs and the firm that provided the writers.   This contract states that the work

11  provided by the firm will be original and will not infringe upon the intellectual property

12  rights of any third party.  (Dkt. no. 37-A.)

13         "Absent intent to defraud and prejudice, inaccuracies in copyright registration do

14  not bar actions for infringement."  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335

15  (9th Cir. 1984).  "[I]nadvertent mistakes on registration certificates do not invalidate a

16  copyright and thus do not bar infringement actions, unless the alleged infringer has

17  relied to its detriment on the mistake, or the claimant intended to defraud the Copyright

18  Office by making the misstatement."  *Urantia Found. v. Maaherra*, 114 F.3d 955, 963

19  (9th Cir. 1997). Omissions may be immaterial if the work would still have been

20  registerable.  *Id.*  As stated above, the burden of proving invalidity rests with the party

21  seeking to rebut the presumption of copyright validity.  *See North Coast Indus.*, 972 F.2d

22  at 1033; *S.O.S., Inc.*, 886 F.2d at 1086.

23         Defendants have failed to demonstrate a likelihood of success on the issue of the

24  registrations' invalidity.  Defendants' burden is "very high," *Bibbero Sys., Inc. v. Colwell

25  Sys., Inc.*, 731 F. Supp. 403, 404 (N.D. Cal. 1988), and they have failed to provide

26  enough evidence for this Court to infer an intent to defraud.  Whether or not other third

27  parties hold valid copyrights over Plaintiffs' test preparation materials, it is likely that

28  Plaintiffs at least hold a valid copyright over the compilation of those materials.

1   Therefore, Plaintiffs are likely to have some registerable materials, despite their failure to
2   designate their works as derivative or compilations.  Further, Gloer's affidavit and the
3   agreement between InstantCert and the independent writing firm suggest that Gloer was
4   unaware that some of their materials might be copyrighted.  The Court will not infer intent
5   to defraud the Copyright Office merely because the copyright registration was prepared
6   by a lawyer and did not include its potential derivative or compilation status.

### 2.   Status of Destroyed Deposit Copy

8   Defendants' last argument is that the deposit copy of the Dantes Exam
9   Preparation materials has been destroyed, thereby invalidating the copyright held by
10  Gloer.

11  This argument is unavailing.  As Plaintiffs correctly point out, the Dantes copyright
12  registration is not invalidated simply because the Copyright Office might have
13  mishandled the submitted materials.  Defendants cite to *Seiler v. Lucasfilm, Ltd.*, 808
14  F.2d 1316, 1319 (9th Cir. 1986), a case where a claim of copyright infringement was
15  made without producing the original work, thereby precluding a proper copyright analysis
16  as to the question of copying and substantial similarity.  Indeed, the *Seiler* court made
17  clear to point out that the plaintiff could not demonstrate that the work was unavailable
18  "through no fault of his own."  *Id.*  Here, the Copyright Office was unable to open the
19  compact disc that contained the copyrighted materials.  This may have been due either
20  to a faulty disc provided by Plaintiffs, or to destruction or ordinary wear and tear
21  occurring after the disc was deposited with the Copyright Office.  Defendants have not
22  met their burden of demonstrating that Plaintiffs' own actions caused the destruction of
23  the deposit copy, and as a result have not overcome the presumption of copyright
24  validity.

25  For the reasons set forth above, Plaintiffs' claim of copyright infringement –
26  whether in the underlying works or as compilations – is likely to succeed on the merits.
27  Defendants have not provided sufficient evidence to question the validity of Plaintiffs'
28  copyrights.

1    **B.    Likelihood of Irreparable Harm**

2    The second factor a court must analyze in determining whether to issue a

3    preliminary injunction is the likelihood of irreparable harm in the absence of temporary

4    injunctive relief.  "The basis of injunctive relief in the federal courts is irreparable harm

5    and inadequacy of legal remedies."  *Los Angeles Memorial Coliseum Comm'n v. Nat'l*

6    *Football League*, 634 F.2d 1197, 1202 (9th Cir.1980) (citing *Sampson v. Murray*, 415

7    U.S. 61, 88 (1974)).  "Perhaps the single most important prerequisite for the issuance of

8    a preliminary injunction is a demonstration that if it is not granted the applicant is likely to

9    suffer irreparable harm before a decision on the merits can be rendered . . . ."  C. Wright,

10   A. Miller & M. Kane, Fed. Practice and Procedure § 2948.1, p. 139 (2d ed. 1995).

11   Traditionally, courts presumed the likelihood of irreparable harm when a plaintiff

12   demonstrated a likelihood of success on a copyright infringement claim.  *Flexible Lifeline*

13   *Sys, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 994-95 (9th Cir. 2011).  However, the

14   Supreme Court's decisions in *Winter* and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S.

15   388 (2006), have altered this presumption. The Ninth Circuit recently held in two

16   copyright infringement actions that a "plaintiff must demonstrate a likelihood of

17   irreparable harm as a prerequisite for injunctive relief, whether preliminary or

18   permanent." *Flexible Lifeline Sys., Inc.*, 654 F.3d at 998; *Perfect 10, Inc. v. Google, Inc.*,

19   653 F.3d 976, 981 (9th Cir. 2011) (decided the same month as *Flexible Lifeline Sys.,*

20   *Inc.*).   As a result, a plaintiff must now present evidence of irreparable injury.  *See*

21   *Leatherman Tool Group, Inc. v. Coast Cutlery Co.*, 823 F. Supp. 2d 1150, 1158 (D. Or.

22   2011).  Showing monetary injuries, without more, will not justify granting a preliminary

23   injunction.  *See Lydo Enter., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th

24   Cir.1984) (explaining that if money damages or other relief granted in the ordinary

25   course of litigation can adequately compensate the plaintiff, irreparable injury probably

26   will not follow the denial of a preliminary injunction); *Los Angeles Memorial Coliseum*

27   *Comm'n*, 634 F.2d at 1202 (noting that purely monetary injuries normally are not

28   considered irreparable).

1    While the Court finds that Plaintiffs will likely succeed on the merits of their
2    infringement claims, the Court cannot presume the likelihood of harm but must
3    determine whether Defendants' infringing conduct will result in irreparable injury to
4    Plaintiffs.  Granting a preliminary injunction is an extraordinary remedy.  *Munaf*, 553 U.S.
5    at 689-90.  As such, "[a] showing of irreparable harm is the single most important
6    prerequisite for the issuance of a preliminary injunction."  *Faiveley Transp. Malmo AB v.*
7    *Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citations
8    omitted).  Plaintiffs fail to offer evidence to satisfy this important prerequisite.

9    Plaintiffs make two arguments in support of their position that irreparable injury is
10   imminent.  First, they argue that counterfeit exam preparation materials "destroys the
11   salability and value" of their work, and that Defendants' conduct results "in a loss of
12   business and profits not measurable with precision."  Second, Plaintiffs argue that their
13   reputation stands to suffer by being associated with Defendants' inferior products.  They
14   allege that Defendants' infringement hurts their investment in their business goodwill and
15   reputation, losses that are not measurable in monetary terms.  Plaintiffs fail to offer any
16   evidence of irreparable harm, but merely rely on the argument that the two types of
17   injuries they advance have been recognized as irreparable injuries.  Both of these
18   arguments fail.

19   Plaintiffs' first argument asks the Court to grant a preliminary injunction merely
20   because the monetary value of Defendants' conduct cannot, at this stage of the
21   litigation, be measured with precision. However, "[t]he possibility that adequate
22   compensatory or other corrective relief will be available at a later date, in the ordinary
23   course of litigation, weighs heavily against a claim of irreparable harm.").  *Sampson*, 415
24   U.S. at 90.  Plaintiffs have not offered any evidence that the value of their business has
25   been impacted by Defendants' infringement.  Moreover, that Defendants' conduct
26   impacts the "salability and value" of Plaintiffs' business is only true to the extent that
27   Defendants are receiving income that might otherwise belong to Plaintiffs.  Put
28   differently, Plaintiffs are losing only the estimated $750 of monthly AOL revenue,

1  assuming all of AOL's services infringe.  Monetary damages alone must be inadequate

2  to compensate for the injury.  *eBay Inc.*, 547 U.S. at 391 ("A plaintiff must

3  demonstrate . . . that remedies available at law, such as monetary damages, are

4  inadequate to compensate for that [irreparable] injury").

5  Plaintiffs' second argument also fails because Plaintiffs have not offered any

6  evidence demonstrating irreparable injury to Plaintiffs' reputation and goodwill.  Failure to

7  make even a minimal showing of irreparable harm proves fatal to Plaintiffs' position that

8  irreparable injury is likely.  *See Goldie's Bookstore, Inc. v. Superior Court of State of*

9  *Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) (findings of loss of goodwill and customers that

10  are speculative and not based on factual allegations do not constitute irreparable injury);

11  *see, e.g.*, *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1169 (C.D. Cal. 2009) (no

12  irreparable injury demonstrated because of failure to provide evidence of reputational

13  harm from infringement); *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 937 n. 3 (N.D. Cal.

14  2009) (denying request for preliminary injunction for failure to provide evidence of

15  irreparable harm resulting from copyright infringement); *CJ Products LLC v. Snuggly*

16  *Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011) (finding irreparable harm where

17  plaintiff produced evidence that infringing product created customer confusion); *Apple*

18  *Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948-49 (N.D. Cal. 2009) (finding irreparable

19  injury in part based on evidence of actual consumer confusion and harm to reputation

20  and goodwill); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832,

21  841 (9th Cir. 2001) ("*Evidence* of threatened loss of prospective customers or goodwill

22  certainly supports a finding of the possibility of irreparable harm.") (emphasis added in

23  parenthetical).

24  Plaintiffs make two general allegations in support of their reputational injury

25  argument: they have invested heavily in their products, reputation, and goodwill; and

26  reputational injury can constitute irreparable harm for the purposes of injunctive relief.

27  However, "[t]he fact that alleged harm is primarily in the form of lost customers and

28  business goodwill, which at least in theory may be compensated by damages, weighs

against a claim of irreparable harm." *OG Intern., Ltd. v. Ubisoft Entm't*, 2011 WL 5079552, at *10 (N.D. Cal. Oct. 26, 2011). Moreover, Plaintiffs have not demonstrated *how* irreparable injury would result from Defendants' actions, and have proffered no evidence in support of their argument. *See Goldie's Bookstore, Inc.*, 739 F.2d at 472; *Aurora World, Inc.*, 719 F. Supp. 2d at 1169. Plaintiffs failed to show how a consumer would connect Defendants' services with InstantCert. AOL grants an ordinary consumer access to test preparation materials, but the record does not demonstrate that the consumer might confuse AOL's materials with those of InstantCert while reading AOL's questions and answers. Without evidence of non-monetary irreparable injury, this Court cannot upend the Ninth Circuit's decisions in *Flexible Lifeline Sys.* and *Perfect 10* by effectively reinstating a presumption of irreparable injury.

For these reasons, Plaintiffs fail to demonstrate that irreparable injury will likely result without a preliminary injunction.

### C.    Balance of Hardships

An injunction may not issue unless the balance of hardships tips in favor of the moving party. *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). "[A] court must remain free to deny a preliminary injunction, whatever be the showing of likelihood of success, when equity in the light of all the factors so requires." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, __ F. Supp. 2d __, 2012 WL 2572037, at *64 (N.D. Cal. July 1, 2012).

Here, Defendants' argument is two-fold: that Defendant Perry will suffer a serious financial setback if a preliminary injunction issues, and that InstantCert will not be unduly harmed if forced to litigate without this preliminary remedy. An injunction would burden Perry and AOL. Failing to issue an injunction would be burdensome to InstantCert to the extent that the injury accrues during the pendency of the litigation. But as Defendants point out, only 53 individuals have subscribed for AOL's services, and AOL is not in any

///

///

position to seriously challenge InstantCert's status atop the industry.[4]  Plaintiffs can seek monetary relief for any damages incurred as a result of Defendants' alleged continuing infringement during the pendency of this litigation.  While Plaintiffs have demonstrated a likelihood of success on the merits, they cannot assume that Defendants are *in fact* infringing.  The Court rejects Plaintiffs' request to collapse the first and third requirements of the preliminary injunction inquiry.  For these reasons, the balance of the hardships inquiry weighs in favor of Defendants.

### D.  Public Interest

The Court concludes that the public interest is served by issuance of a preliminary injunction, as "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work."  *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983); *Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1015 (C.D. Cal. 2011) (quoting *Apple Computer, Inc.*).

In summary, the Court holds that a preliminary injunction against Defendants is inappropriate.  Plaintiffs have failed to proffer specific evidence as to the likelihood of irreparable injury it faces in the absence of such an extraordinary remedy, and have failed to demonstrate that the balance of the hardships favors granting preliminary relief.  Although Plaintiffs have demonstrated a likelihood of success, whatever damage incurred by the Plaintiffs during the course of the litigation can be addressed at the remedy stage of the litigation in the event that Plaintiffs succeed on the merits.

///

---

[4]Plaintiffs use these same figures to argue that AOL stands to lose *less* were an injunction to issue since it cannot be, by virtue of its small subscriber base, a very profitable entity.  However, the injunction could seriously damage AOL's entire business, and the hardship to AOL would be necessarily great.  This is a different situation than occurred in *CJ Products LLC*, where the district court qualified its balance of hardship finding on the fact that the accused infringing company would "not be severely impacted, as they have an extensive array of non-infringing products that they may continue selling."  *CJ Products LLC*, 809 F. Supp. 2d at 146.

IV.     **CONCLUSION**

Accordingly, IT IS HEREBY ORDERED THAT Plaintiffs Steven Gloer and InstantCert.com, LLC's Motion for Preliminary Injunction (dkt. no. 31) is DENIED.


ENTERED THIS  27th day August of 2012.

_____
UNITED STATES DISTRICT JUDGE

13